J-S42042-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

IN THE INTEREST OF: D.C., A MINOR
:
:
:
:
:
:
:
:
:
:

APPEAL OF D.C., A MINOR
:

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1998 MDA 2017

Appeal from the Dispositional Order October 16, 2017
in the Court of Common Pleas of Dauphin County Juvenile Division
at No(s): CP-22-JV-0000488-2017

BEFORE:    BOWES, MCLAUGHLIN, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:            **FILED: OCTOBER 17, 2018**

D.C. (Appellant) appeals from the dispositional order entered on October 16, 2017, following his adjudication of delinquency for possession of a firearm by a minor, burglary, receiving stolen property,[1] and conspiracy to commit burglary.  We affirm in part, reverse in part, and remand the matter to the juvenile court for proceedings consistent with this memorandum.

The juvenile court summarized the relevant factual history of this case as follows.

> During the weekend of July 7, 2017, the victim, Mark Keller, Sr. [(Mr. Keller)] and his family were out of town, and their home [was] left unoccupied.  Upon arriving home, Mr. Keller noticed that the air conditioning unit in his daughter's bedroom was missing

_____

[1] The Commonwealth originally charged Appellant with theft by unlawful taking.  However, at the beginning of the adjudication hearing, and without an objection by Appellant, the Commonwealth sought to amend the charge to receiving stolen property, which the juvenile court subsequently granted. N.T., 9/27/2017, at 4.

*Retired Senior Judge assigned to the Superior Court.

and not visible from the street. He then went through the inside of the home and discovered that numerous items, including two [] PlayStation gaming systems, a .380 handgun, a 12 [gauge] pump, a necklace, and an iPod[] were missing. Mr. Keller immediately reported the incident to the Borough of Highspire Police Department.

A short time after the burglary, a video was posted on the social media application [Snapchat[2]] of a firearm that was taken from Mr. Keller's home. The video was personally viewed by Mr. Keller, as well as his son, Mark Keller, Jr. (hereinafter "Junior"), who identified the firearm as the .380 Ruger that was taken from his home. Junior stated that the video was not sent to his [Snapchat account], but was sent to an unidentified person. Despite viewing the video in the presence of the person who received it, Junior did not recall the name of the individual who actually received the video. Both Mr. Keller and Junior identified [Appellant] as the individual in the video with the firearm. Mr. Keller was familiar with [Appellant] because he and Junior used to be friends, and [Appellant] spent a lot of time with their family. [Mr. Keller] testified that [Appellant] was aware that firearms were kept in the home, but not of where they were physically located. [The video was played at the adjudication hearing.]

Approximately one [] month after the burglary, Junior began receiving messages through [Snapchat] from [Appellant. Appellant's] username on [Snapchat] is "Trey[,"] and the messages that Junior received were from the same username.[6] Junior testified that he received a message from [Appellant] asking to meet up to return the stolen items.[7] [Appellant] requested $350 in exchange for the .380 Ruger and a pair of Junior's shoes. Junior stated that he asked [Appellant] why he broke into the home, and [Appellant] responded that he needed money. The two planned to meet in the middle of the night for the exchange, but Junior never went.

─────────

[2] "Snapchat is a social media platform where users share photographs and messages ...." ***Goldman v. Breitbart News Network, LLC***, 302 F. Supp. 3d 585, 585 n.1 (S.D.N.Y. 2018).

<sup>6</sup> Junior knew the person sending the messages through [Snapchat] was [Appellant] because they would continue their [Snapchat] conversations when they next saw each other in person. [Additionally, Appellant admitted he was the one who sent the messages to Junior.]

<sup>7</sup> Although the screenshots of the conversation admitted [at the adjudication hearing were] one-sided wherein only [Appellant's] messages were shown, Junior testified as to what his messages purportedly stated.

Thereafter, Junior sent a message to [Appellant] asking for a picture of the .380 Ruger and the shoes. [Appellant] declined, commenting that Junior was just going to use it as evidence against him. Junior also testified that [Appellant] sent him a message threatening to beat him up and take his money.

During the course of the investigation, Officer Jeffrey Levan with the Borough of Highspire Police Department interviewed [Appellant]. Officer Levan went to [Appellant's] home, read him his [**Miranda**<sup>3</sup>] rights, and interviewed him in the presence of his grandmother. [Appellant] stated that he did not know where the .380 Ruger was because he gave it to a friend, but refused to disclose the name of the friend. [Appellant] and his grandmother consented to a search of [Appellant's] room and none of the items w[as] found.

Juvenile Court Opinion, 2/21/2018, at 3-5 (record citations omitted).

In addition to the foregoing, Gloria Bechtel, who lives next door to the Kellers, testified at Appellant's adjudication hearing that during the weekend of July 7, she was walking "out back" to her car when she noticed there were children swimming in the Kellers' pool. N.T., 9/27/2017, at 5. Ms. Bechtel stated that she "didn't think anything of it at first[,]" until the Kellers arrived

---

<sup>3</sup> **Miranda v. Arizona**, 384 U.S. 436 (1966).

- 3 -

home and informed her that their home had been vandalized. *Id.* It was then that Ms. Bechtel informed the Kellers of the children swimming in the pool. *Id.* She testified that from her vantage point she saw "a young colored gentleman [with dreadlocks and] two other people with" him. *Id.* at 5-6. Although she was looking through a fence at the time and admitted that she only saw the "back of [his] head[,]" Ms. Bechtel identified Appellant as the individual with dreadlocks that she saw in the backyard that day. *Id.*

> On July 12, 2017, a delinquency petition was filed against Appellant.
>
> An adjudication hearing was held on September 27, 2017. At the conclusion of the hearing, the [juvenile] court substantiated all counts, as amended, concluding that the Commonwealth proved the delinquent acts beyond a reasonable doubt. [Appellant] was adjudicated delinquent and found in need of treatment, supervision, or rehabilitation. A Dispositional Hearing was held on October 16, 2017, wherein [Appellant] was put on formal probation, placed in a residential facility at Adelphoi Village, and ordered to pay restitution in the amount of $500.00 to [Mr. Keller].
>
> On October 26, 2017, [Appellant] filed a timely post-dispositional motion. The Commonwealth filed a response on November 24, 2017. After a review of the pleadings[, the juvenile c]ourt denied [Appellant's] post-dispositional motion.

Juvenile Court Opinion, 2/21/2018, at 2 (footnotes and unnecessary capitalization omitted).

Appellant filed a notice of appeal, and both Appellant and the juvenile court complied with Pa.R.A.P. 1925. On appeal, Appellant presents the following issues for our review.

1. Whether the evidence presented at [the] adjudication hearing was insufficient to sustain the adjudication of delinquency for burglary, receiving stolen property, possession of [a] firearm by a minor, and criminal conspiracy to commit burglary?

2. Did the [juvenile] court err when it denied [Appellant's] motion for a new adjudication hearing based on the adjudication of delinquency was [sic] against the weight of the evidence?

3. Did the [juvenile] court err when it did not take into consideration that the Commonwealth had charged [Appellant] with theft by receiving stolen property because the Commonwealth could not show that the juvenile was involved in the burglary?

4. Did the [juvenile] court err when it allowed the one[-]sided Snapchat conversations into evidence due to the fact that they were not properly preserved and lacked a foundation?

Appellant's Brief at 9 (unnecessary capitalization and suggested answers omitted).

We begin with our standard of review of dispositional orders in juvenile proceedings. The Juvenile Act grants broad discretion to juvenile courts in determining appropriate dispositions. *In re C.A.G.,* 89 A.3d 704, 709 (Pa. Super. 2014). Indeed, the Superior Court will not disturb the juvenile court's disposition absent a manifest abuse of discretion. *In the Interest of J.D.,* 798 A.2d 210, 213 (Pa. Super. 2002). "Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record."

*Commonwealth v. Handfield*, 34 A.3d 187, 208 (Pa. Super. 2011) (quoting

*Commonwealth v. Cain*, 29 A.3d 3, 6 (Pa. Super. 2011)).

We review Appellant's sufficiency claim, mindful of the following.

When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.

In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*In re V.C.*, 66 A.3d 341, 348–49 (Pa. Super. 2013) (citation and quotation

marks omitted). The finder of fact is free to believe some, all, or none of the

evidence presented. *Commonwealth v. Gainer*, 7 A.3d 291, 292 (Pa. Super.

2010).

On appeal, Appellant contends that the Commonwealth failed to prove

the elements of the aforementioned crimes beyond a reasonable doubt,

although he cites little case law to support his argument. Appellant's Brief at

18-22. Appellant baldly asserts that the juvenile court's conclusions are not supported by the record. Specifically, Appellant argues that the testimony of the Commonwealth's witnesses and evidence introduced at the adjudication hearing failed to establish the elements of the crimes charged. *Id.*

First, we observe that Appellant preserved only his sufficiency challenge with respect to his adjudication of delinquency for conspiracy to commit burglary. The rest of his sufficiency claim is waived due to his inadequate Pa.R.A.P. 1925(b) concise statement. Specifically, with respect to burglary, receiving stolen property, and possession of a firearm by a minor, Appellant's concise statement raised only a generic challenge and did not specify precisely which elements of the crimes he contends the Commonwealth failed to prove.

This Court has repeatedly required an appellant to specify in the Rule 1925(b) statement the particular element or elements upon which the evidence was insufficient. *See Commonwealth v. Tyack,* 128 A.3d 254, 260 (Pa. Super. 2015) ("Appellant's Rule 1925(b) statement simply declared, in boilerplate fashion, that the evidence was insufficient to support his conviction. … The statement thus failed to specify the element or elements upon which the evidence was insufficient to support Appellant's conviction— and we must conclude that Appellant's sufficiency of the evidence claim is waived on appeal.") (quotation marks omitted).

Regarding his sufficiency claims with respect to his adjudication of delinquency for burglary, possession of a firearm by a minor, and theft by

- 7 -

receiving property, we note that even if Appellant did not waive these challenges based upon his deficient Rule 1925(b) statement, Appellant would still not be entitled to relief. When evaluating Appellant's sufficiency claim

> the entire record must be evaluated and all evidence actually received must be considered. … When examining the evidence in the trial record in a light most favorable to the Commonwealth, we do not make new factual determinations based on the trial evidence introduced; rather, we accept the evidence of record, and all reasonable inferences drawn therefrom on which the factfinder could properly have based its verdict, as factually true.

*In Interest of J.B.*, 189 A.3d 390, 414–15 (Pa. 2018) (quotations, citations, and footnote omitted).

In order for the juvenile court to adjudicate Appellant delinquent for burglary, the Commonwealth had to prove that Appellant "enter[ed] a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present" with the intent to commit a crime therein. 18 Pa.C.S. § 3502(a)(2). For possession of a firearm by a minor, the Commonwealth was required to prove that (1) the weapon was a firearm as defined by the statute, (2) that Appellant was in possession of the firearm, and (3) that Appellant was under the age of 18 at the time of the offense. 18 Pa.C.S. § 6110.1(a). Lastly, to prove theft by receiving stolen property, the Commonwealth must present evidence to prove that Appellant received, retained or disposed of "moveable property of another knowing that it ha[d] been stolen, or believing that it ha[d] probably been stolen[.]" 18 Pa.C.S. § 3925.

In addressing Appellant's sufficiency claim, the juvenile court stated that "[t]he testimony and evidence presented at the adjudication hearing, together with all reasonable inferences derived therefrom, is [*sic*] sufficient to sustain Appellant's adjudications[.]" Juvenile Court Opinion, 2/21/2018, at 7. Our review of the record confirms that the juvenile court did not abuse its discretion when finding the evidence was sufficient to prove the aforementioned crimes.[4] Upon viewing the evidence in light most favorable to the Commonwealth, we agree with the juvenile court that the testimony at the adjudication hearing established that during the weekend of July 7, while Mr. Keller was away with his family, his home was burglarized. N.T., 9/27/2017, at 9-10. A Ruger .380 handgun was among the items stolen from Mr. Kellers' home. *Id.* at 10. That same weekend, Ms. Bechtel, a neighbor of the Kellers, witnessed three boys in the Keller's swimming pool, and she identified one of the individuals as Appellant. *Id.* at 5-6. Approximately a week after the burglary, Mr. Keller and his son, Junior, viewed a video on Snapchat, which depicted Appellant holding a Ruger .380. *Id.* at 13, 19. Junior identified the weapon seen in the video as his "dad's gun." *Id.* at 18-

---

[4] We note that our references *infra*, to the Snapchat video and messages entered into evidence as Commonwealth's Exhibits 1-8, are based upon the testimony of Mr. Keller, Junior, and Appellant. These exhibits were not included in the certified record received by this Court. "[I]t is appellant's duty to ensure that the certified record is complete for purposes of review." **Commonwealth v. Wall**, 953 A.2d 581, 586 n.6 (Pa. Super. 2008) (citation and quotation marks omitted).

19. Mr. Keller testified that he knew Appellant prior to viewing this incident because Appellant and Junior used to be friends. *Id.* at 15. Mr. Keller confirmed that Appellant was aware there were firearms in Mr. Keller's home. *Id.*

Officer Levan testified that during his investigation of the burglary he spoke with Appellant, explained to Appellant he had viewed the Snapchat video of Appellant with a handgun and loaded magazine and asked where the firearm was. *Id.* at 31. Appellant responded that "he didn't know, and then [Appellant] stated he gave it to a friend." *Id.* When asked to identify who currently had the firearm, Appellant refused. *Id.*

In addition, Junior testified about a conversation he had with Appellant via Snapchat. Due to the nature of Snapchat, only Appellant's messages were preserved, but Junior testified, without objection, as to what he said in response to the messages. These messages, which Appellant admitted he sent, involved the burglary and items stolen from the home. *Id.* at 21-27, 37. Specifically, Appellant had agreed to meet Junior to return the firearm and a pair of sneakers in exchange for money. *Id.* at 25. Further, Appellant sent a message to Junior explaining he burglarized the home because he was "down bad."[5] *Id.* at 24.

---

[5] Junior testified that "down bad" meant not having money. N.T., 9/27/2017, at 24.

- 10 -

Based on the foregoing, the evidence was sufficient to allow the juvenile court to conclude that Appellant: (1) entered Mr. Keller's home, without permission, and with the intention to commit a crime; and (2) was in possession of stolen property, namely a Ruger .380.[6] Thus, with respect to the charges of burglary, possession of a firearm by a minor, and receiving stolen property, Appellant's sufficiency challenge fails.

We now address Appellant's claim that the evidence was insufficient to prove conspiracy to commit burglary. On appeal, Appellant argues the Commonwealth failed to prove conspiracy because it did not introduce any evidence to prove "that there was an agreement between Appellant and the co-defendant[7] to burglarize [Mr. Keller's] home." Appellant's Brief at 22.

To prove conspiracy, the evidence must show that Appellant agreed with a "person or persons that they or one or more of them will engage in [or aid in] conduct which constitutes such crime or an attempt or solicitation to commit such crime[.]" 18 Pa.C.S. § 903.

---

[6] Notably, at the close of testimony, Appellant's counsel conceded "that the possession of [a] firearm by a minor has been met by the Commonwealth due to the videos that were presented today in evidence." N.T., 9/27/2017, at 9-10.

[7] The record reflects that there is a co-defendant in this case. *See* Petition for Appointment of Counsel Outside the Public Defender's Officer, 8/14/2017 (requesting appointment of outside counsel because a conflict of interest exists with representing Appellant since a co-defendant "is currently being represented by the Public Defender's Office."). However, there is no mention or introduction of any testimony regarding this co-defendant at the adjudication hearing.

[Conspiracy] requires proof that: 1) the [juvenile] entered into an agreement with another to commit or aid in the commission of a crime; 2) he shared the criminal intent with that other person; and 3) an overt act was committed in furtherance of the conspiracy. This overt act need not be committed by the [juvenile]; it need only be committed by a co-conspirator.

The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, [an adjudication of delinquency] for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.

[M]ere presence at the scene of a crime and knowledge of the commission of criminal acts is not sufficient [to establish a conspiracy]. Nor is flight from the scene of a crime, without more, enough. However, such factors, combined with other direct or circumstantial evidence, may provide sufficient evidence sustaining an adjudication of delinquency for conspiracy.

*In re V.C.*, 66 A.3d 341, 349–50 (Pa. Super. 2013).

In this case, the juvenile court found sufficient evidence to adjudicate Appellant delinquent of conspiracy based on: (1) Ms. Bechtel's identification of Appellant being present in the Kellers' pool the weekend of the burglary with two unidentified juveniles; (2) evidence that established Appellant was involved in burglarizing the Kellers' home; and (3) Appellant's admission to

Officer Levan that he had given the firearm to a friend, which the juvenile court found "reinforce[d] the existence of at least one [] co-conspirator." Juvenile Court Opinion, 2/21/2018, at 7-8.

In its brief to this Court, the Commonwealth echoed the juvenile court's conclusions, averring "[t]he presence of the group of persons at the scene of the crime in addition to the possession of stolen property by [Appellant] may therefore be used to draw the inference that a conspiracy to commit burglary and theft existed between the parties." Commonwealth's Brief at 7 (unnumbered).

Upon review of the evidence submitted and the applicable case law cited *supra*, we disagree with the juvenile court's conclusion that there was sufficient evidence to establish a conspiracy. "The facts and circumstances show neither a criminal agreement nor an overt act in furtherance of a criminal agreement." *Commonwealth v. Paschall*, 482 A.2d 589, 592 (Pa. Super. 1984). Here, the only evidence presented at the adjudication hearing with respect to the involvement of additional individuals with whom Appellant is alleged to have conspired is the testimony of Ms. Bechtel who stated she observed Appellant and two other juveniles in the Kellers' pool. Juvenile Court Opinion, 2/21/2018, at 7. Notably, she did not testify that she saw the juveniles engaging in any criminal activity. "Mere association or presence at the scene of a crime is insufficient to establish a conspiracy." *In Interest of J.F.*, 714 A.2d 467, 474 (Pa. Super.1998). *See also In re Amos*, 430 A.2d

688, 690 (Pa. Super. 1981) (The "presence at the scene of a crime in company with the alleged perpetrator [] has been held not sufficient to sustain a conviction" for conspiracy); **Commonwealth v. Chambers**, 188 A.2d 400 (Pa. 2018) ("Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient to prove that a particular actor was involved in a criminal conspiracy.") (quotation marks omitted).

Nor are we able to infer, as the juvenile court has, that Appellant's admission that he gave the firearm to a friend "reinforced" the existence of a conspiracy. This act, without more, does not establish a shared criminal intent between Appellant and this unnamed friend. In fact, there is no evidence this unnamed friend was one of the individuals seen by Mrs. Bechtel. "A conspiracy cannot be established based only upon mere suspicion and conjecture. Preexisting relationships or '*mere association* of participants,' without more, will not suffice to establish a prosecutable criminal conspiracy." **Id.** at 410. (some quotation marks omitted; emphasis in original). Thus, we find the evidence at the adjudication hearing was insufficient to prove the existence of a conspiracy, and reverse his adjudication of delinquency with respect to this charge. **See In Interest of J.B.**, 189 A.3d at 415 ("If the evidence of record viewed in the light most favorable to the Commonwealth, as well as all reasonable inferences derived therefrom, does not establish the defendant's guilt beyond a reasonable doubt of any element of the offense for which he

was tried, then the evidence is insufficient to sustain the defendant's conviction as a matter of law, and he must be discharged.")

Next, we begin our review of Appellant's weight claim[8] by setting forth our standard of review.

> This Court applies the same standard for reviewing weight of the evidence claims in juvenile cases as those involving adults. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the [juvenile] court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. Moreover, a court's denial of a motion for a new trial based upon a weight of the evidence claim is the least assailable of its rulings.

*In Interest of J.G.*, 145 A.3d 1179, 1187 (Pa. Super. 2016) (citations and quotation marks omitted).

> A [] court should award a new trial on this ground only when the verdict is so contrary to the evidence as to shock one's sense of justice. A motion alleging the verdict was against the weight of the evidence should not be granted where it merely identifies contradictory evidence presented by the Commonwealth and the defendant. Our review on appeal is limited to determining whether the [] court abused its discretion in denying the motion for a new trial on this ground.

*Commonwealth v. Chamberlain,* 30 A.3d 381, 396 (Pa. 2011) (citations omitted).

In support of his argument, Appellant contends the juvenile court afforded "improper weight" to the testimony of Ms. Bechtel and Junior.

---

[8] Because we find the evidence insufficient to sustain an adjudication of dependency for conspiracy, we address Appellant's weight claim only as it pertains to the remaining crimes.

- 15 -

Appellant's Brief at 22. Specifically, Appellant avers the juvenile court: (1) "improperly assumed that [] Appellant was actually involved" in the burglary based on Ms. Bechtel's testimony "even though based on her own testimony, she did not see Appellant engaged in any criminal conduct during the entire episode[,]" and did not see the face of the juvenile who[m] she described as "a young colored gentleman" with dreadlocks; and (2) "improperly relied on [Junior's] statements when it came to the conversation [Junior] had with Appellant, which w[as] not preserved" on Snapchat. *Id.* at 23. Additionally, Appellant argues that Junior's testimony that he could not identify the individual who received the Snapchat video from Appellant, even though Junior testified that he was in this individual's presence at the time he viewed the video, called into doubt Junior's credibility. *Id.*

With respect to its verdict, the juvenile court noted that the evidence presented, which included additional evidence beyond the testimony of Ms. Bechtel and Junior, supported the court's adjudication. Additionally, the court credited Junior's testimony regarding the conversation he had with Appellant. *Id.* In doing so, the court presumably disbelieved Appellant's testimony that he did not break into the Kellers' home and that he "wasn't thinking" when he sent the messages to Junior. N.T., 9/21/2017, at 33-34.

We discern no abuse of discretion in the court's conclusion. In this case, the court reviewed all the evidence presented, including the Snapchat video and conversations involving Appellant, as well as the testimony of Appellant,

the investigating officer, Ms. Bechtel, Mr. Keller, and Junior. After doing so, the juvenile court was within its discretion to disbelieve Appellant's testimony in favor of the other witnesses and evidence presented. *See Commonwealth v. Kinney*, 157 A.3d 968, 972, n.3 (Pa. Super. 2017) ("The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses.... An appellate court cannot substitute its judgment for that of the jury on issues of credibility.") (citation omitted). No relief is due.

With respect to his third issue, Appellant avers the juvenile court erred in failing to "take into consideration the fact that the Commonwealth" amended Appellant's charge from theft by unlawful taking to theft by receiving stolen property. Appellant's Brief at 24. Appellant contends this amendment was made because "the Commonwealth could not show that Appellant was involved in the [b]urglary to be able to prove a [t]heft by [u]nlawful [t]aking offense." *Id.*

We begin by noting that Appellant's issue as presented is confusing, and like the juvenile court, this Court is "unable to discern the precise issue Appellant is trying to raise." Juvenile Court Opinion, 2/21/2018, at 10. The juvenile court opined that Appellant is "attempting to assert a challenge to the amended charge[,]" and such a claim is waived.[9] *Id.*

---

[9] The court's interpretation of this issue is based on the language in Appellant's concise statement, in which he set forth the following, *verbatim*:

- 17 -

Based on our review of Appellant's brief, although inarticulately phrased, it appears to this Court that Appellant is attempting to argue that he could not be adjudicated delinquent of both burglary and theft by receiving stolen property, although Appellant provides no real argument in support of this contention. Appellant's Brief at 24-25 ("If Appellant was found [guilty] on the [b]urglary charge[, …] he could not have received property that was stolen from another.").

To the extent Appellant is attempting to challenge the amended charge, we agree with the juvenile court that, because Appellant did not object to the Commonwealth's request to modify the charge, Appellant failed to preserve this issue for appeal and it is waived. N.T., 9/27/2017, at 4 (When asked whether there was any objection to the Commonwealth's proposed modification, Appellant's counsel answered "[n]o objection[.]"). Furthermore, any claim that the juvenile court erred in granting the Commonwealth's request is similarly waived. *See* Pa.R.A.P. 320(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

---

The trial court erred when it did not take into consideration the fact that the Commonwealth had charged the Juvenile with Theft by Receiving Stolen Property because the Commonwealth could not show that the Juvenile was involved in the Burglary to be able to prove a Theft by Unlawful Taking offense.

Concise Statement, 1/24/18, at 3 (unnumbered).

We likewise find that because the issue raised in Appellant's concise statement is vague and confusing, Appellant has failed to preserve properly his claim that the juvenile court erred when it adjudicated Appellant delinquent of both burglary and theft by receiving stolen property.

> Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Rule 1925 is thus a crucial component of the appellate process. When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.

*Commonwealth v. Ray*, 134 A.3d 1109, 1114 (Pa. Super. 2016) (citation omitted).

Regardless, even if Appellant preserved this issue for our review, he would not be entitled to relief. First, as set forth *supra*, the evidence was sufficient to adjudicate Appellant delinquent of burglary and theft by receiving stolen property. Second, we categorically reject any attempted argument made by Appellant that, because the basis of his adjudication for burglary was his intention to commit a theft therein, he could not have been found to have committed the crime of theft by receiving stolen property. Appellant's Brief at 25. *See Commonwealth v. Kuykendall* 465 A.2d 29 (Pa. Super. 1983) (holding, *inter alia*, that a defendant who stole a vehicle and retained it could be convicted of receiving stolen property that he himself had stolen).

With respect to Appellant's final claim, Appellant contends the juvenile "court erred when it allowed [one-sided Snapchat] conversations into evidence due to the fact that they were not properly preserved and lacked a foundation." Appellant's Brief at 25. Appellant avers the entry of these conversations "improperly shifted the burden to [Appellant] to testify during the proceedings in order to explain" the conversations. *Id.*

> The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. Evidence is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. But, [a]lthough relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Commonwealth v. Sanchez*, 36 A.3d 24, 48–49 (Pa. 2011) (citations and quotation marks omitted).

In its opinion to this Court, the juvenile court noted that while "Appellant objected to the lack of foundation of Commonwealth's Exhibit 1- a Snapchat video- he failed to object to the remainder of the Commonwealth's exhibits." Juvenile Court Opinion, 2/21/2018, at 10. Thus, the court opined, Appellant waived this issue. After review of the transcript, we agree.

"We have long held that [f]ailure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal." *Commonwealth v. Thoeun Tha*, 64 A.3d 704, 713 (Pa. Super. 2013) (citations and quotation

marks omitted). **See also Commonwealth v. Tucker**, 143 A.3d 955, 961 (Pa. Super. 2016) ("[T]he failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue."); Pa.R.E. 103(a)(1).

In this case, Appellant's counsel did not object to the entry of the Snapchat conversations at trial. N.T., 9/27/2017, at 22-23. In fact, when the Commonwealth requested the Snapchat messages be entered into evidence, counsel for Appellant stated he had "no objection." **Id.** Accordingly, we find Appellant's final claim waived.[10]

In light of the foregoing, we reverse Appellant's adjudication of delinquency with regard to the conspiracy charge, but affirm the adjudication in all other respects. As this may affect the juvenile court's disposition, we vacate the disposition order of October 16, 2017 and remand for entry of a new disposition order.

Adjudication affirmed in part, reversed in part, and case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

---

[10] Furthermore, as stated *supra*, Appellant has failed to include these exhibits in the certified record. Thus, even if this claim were not waived for the foregoing reason, we would find waiver based on Appellant's failure to ensure the inclusion of the exhibits in the record. **See Commonwealth v. Manley**, 985 A.2d 256, 263 (Pa. Super. 2009) ("A failure by [A]ppellant to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes waiver of the issue sought to be examined.") (citation omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/2018